IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSHUA CHARLES LOVELL MOSELEY,

     Petitioner,

v.                              Civil Action No. 3:19CV40

HAROLD W. CLARKE,

     Respondent.

### MEMORANDUM OPINION

Joshua Charles Lovell Moseley, a Virginia inmate proceeding pro se, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition," ECF No. 1) challenging his 2013 conviction in the Circuit Court of the City of Hampton, Virginia (hereinafter "Circuit Court") of two counts of burglary and two counts of grand larceny. The Court understands that, in his § 2254 Petition, Moseley argues that he is entitled to relief on the following grounds:[1]

Claim One:    Appellate counsel rendered ineffective assistance when Moseley "reached out to him numerous times and he didn't respond" and then refused "to remove himself from [Moseley's] case" when Moseley wanted to proceed pro se and instead, "chose to handle [Moseley's] entire case and oral argument without [Moseley]." (§ 2254 Pet. 5.)

---

[1] The Court corrects the capitalization, spelling, and punctuation in quotations from Moseley's submissions. The Court employs the pagination assigned by the CM/ECF docketing system.

Claim Two:      Appellate counsel rendered ineffective
                assistance because he failed to notify Moseley
                that the Supreme Court of Virginia had issued
                its opinion causing Moseley to miss the
                deadline for filing a petition for rehearing
                on the basis that the Supreme Court of
                Virginia "used a murder case in a grand
                larceny case where totality standards are
                different." (Id. at 7.)

Claim Three:    Appellate "counsel was deficient . . . because
                [he] was unaware of controlling law.   He
                paraphrase[d] the most important law in grand
                larceny cases [that] . . . [n]o matter how
                much incriminating evidence you have you must
                show that the accused had possession or
                knowledge of stolen goods, yet he simply
                stated you must show possession[.]   However,
                with the full quote, [i]t prohibits the VA
                Supreme Court['s] use of a murder case where
                standards are different [and] my lawyer was
                unaware of such." (Id. at 8.)

Claim Four:     "Denial of Fourteenth Amendment (Protection
                and Equality).  The Supreme Court defines two
                categor[ies] in which a state prisoner may
                gain habeas relief.  One:   The defendant must
                show that the state and Supreme Court arrived
                at two different conclusion or question of law
                (in the lower Court of Appeals and Supreme
                Court arrived at two different conclusion[s]
                using different laws in my case).   Two:   If
                the court uses a law that ha[s] different
                governing legal principles: A murder case was
                used in a larceny case where standards are
                different.    In my case, it [was] about
                possession not probability." (Id. at 10.)

Respondent has filed a MOTION TO DISMISS AND RULE 5 ANSWER ("Motion

to Dismiss," ECF No. 8) arguing that Claim Four is defaulted and

barred from review here and that Claims One through Three lack

merit.   Moseley has filed a Prayer for Habeas Relief Reply to

2

Respondent Answer Rule 6 ("Response," ECF No. 12) with many attachments.

## I.    FACTUAL AND PROCEDURAL HISTORY

A grand jury charged Moseley with two counts of grand larceny and three counts of breaking and entering. Indictments 1-5, Commonwealth v. Moseley, Nos. 1309-080 through 1309-84 (Va. Cir. Ct. Sept. 3, 2013). After a bench trial, Moseley was convicted of two counts of grand larceny and two counts of breaking and entering and one count of breaking and entering was nolle prossed by the Commonwealth. See id. No. 1309-080 (Va. Cir. Ct. Nov. 5, 2013). Commonwealth v. Moseley, 799 S.E.2d 683, 684 (Va. 2017). The Circuit Court sentenced Moseley to an active sentence of six years of incarceration. See Moseley, 799 S.E.2d at 684.

### A.    Direct Appeal

On appeal, Moseley argued that "the evidence was insufficient to prove that he was the person who committed the crimes." Moseley v. Commonwealth, No. 0881-15-1, 2016 WL 3172701, at *1 (Va. Ct. App. June 7, 2016). The Court of Appeals of Virginia agreed and reversed Moseley's convictions. Id. The Commonwealth appealed that decision and the Supreme Court of Virginia granted its petition for appeal. See Moseley, 799 S.E.2d at 684. In reversing the Court of Appeals of Virginia, the Supreme Court of Virginia aptly summarized the evidence of Moseley's guilt as follows:

3

At trial, the Commonwealth presented evidence that on June 3, 2013, between noon and 5:15 p.m., a burglary occurred at John and Mary Ann Winsley's home located on Wilderness Road in Hampton, Virginia. Mr. Winsley testified that when he returned home from work the door leading into his garage was broken open. Mr. Winsley called police, who then dusted for fingerprints while he and his wife inventoried their missing items. Among other things, the Winsleys testified that their collection of rare coins and paper currency was missing.

Captain Susan Canny of the Hampton police department testified that she drove past the Winsley residence at around 3:00 p.m. on June 3, 2013. As she drove past, Captain Canny inadvertently "cut off" another driver who was "pulling off the curb" next to the Winsley property. The other vehicle stopped and Captain Canny testified that she had a "nice clear view" of the driver, whom she later identified as Moseley. Captain Canny took notice of Moseley because she lived nearby, and the residents of the community "watch out for everybody." She testified that Moseley "looked startled when he saw [her]."

Jonathan Ellis testified that on June 17, 2013, two weeks after the first burglary, his home located on Fort Worth Street was burglarized between 10 a.m. and 3:40 p.m. Mr. Ellis testified that when he returned home from work he discovered the back door was unlocked. Inside, Mr. Ellis found his video games strewn across the living room floor and his wife and daughter's jewelry boxes overturned in their bedrooms. Mr. Ellis testified that various pieces of jewelry were missing from those boxes.

Officer Eric Rausch of the Hampton Police testified that on that same day he responded to a call regarding an attempted burglary in the Beauregard Heights area of Hampton. Officer Rausch testified that the caller described the subject as "a black male wearing a gray T-shirt, black shorts, in his mid-to-late 20s." When Officer Rausch arrived in the area, he observed Moseley walking down East Little Back River Road. Moseley fit the caller's description, so Officer Rausch stopped and spoke with him. June 17, 2013, was not "a particularly cold day," but Moseley was carrying a pair of "heavier knit glove[s]" in one of his pockets. Officer Rausch testified that the gloves were similar to those worn by "grocery store workers [when] moving frozen foods back and forth." Moseley told Officer Rausch "that they were

4

his workout gloves." Officer Rausch took Moseley into custody.

Captain Canny testified that she heard the report of the attempted burglary over her police radio. The report indicated that the attempted burglary took place at the corner of Wilderness and Beauregard Heights, which was behind her home. Captain Canny was "very concerned about the burglaries in the area," so she went to the police station to speak with the detectives. When she arrived, Captain Canny immediately recognized Moseley as the man she had seen pulling away from the Winsley residence two weeks earlier.

At approximately 10:30 p.m. on June 17, 2013, tow truck driver Robin Shuffler received a call to tow a white 1990 Crown Victoria away from Willow Oaks Apartments, which was "right across from Little Back River Road." When he arrived, Shuffler observed that all four of the vehicle's windows were down and the keys were inside. Shuffler towed the vehicle to a secure lot, where he began to inventory its contents. As he was inventorying, Shuffler discovered a "bag of jewelry and some marijuana," which prompted him to call his boss. Shuffler's boss told him not to disturb anything, and the police were contacted the following morning.

Detective Corporal Erik Rummell testified that the next morning, on June 18, 2013, he executed a search warrant for the interior of the white Crown Victoria. Detective Rummell testified that the glove box contained an electric bill, which was addressed to Joshua Moseley and dated March 28, 2013. In addition, the center console of the vehicle contained: 1) Moseley's Virginia identification card, 2) Moseley's Portsmouth library card, 3) a box of suspected marijuana, 4) a bag of jewelry, and 5) various paper bills and coins, some of which were in protective sleeves. According to Detective Rummell, the "stuff [was] all jumbled up . . . they were all just kind of mingled together." The Winsleys and the Ellises confirmed that several of the items found in the console had been stolen from their homes in the two burglaries.

Melissa Cook, the property manager of the address listed on Moseley's electric bill, testified that she had seen Moseley driving the vehicle "on a regular basis." Cook explained that Moseley drove the car "[p]retty much on a daily basis for the time that [he] stayed there." Nevertheless, Cook was unable to recall the specific dates or the period of time during which

she had seen Moseley driving the car. On cross-examination, Detective Rummell acknowledged that the white Crown Victoria was not registered to Moseley, but was instead registered to Kelton Adams-Elkins.

Moseley moved to strike the evidence at the close of the Commonwealth's case-in-chief and again at the close of all of the evidence. He argued that the Commonwealth failed to prove that he possessed the stolen items found in the Crown Victoria, and therefore the Commonwealth was not entitled to the inference that he committed the larcenies and burglaries. Moseley argued that he could have sold the vehicle to Kelton Adams-Elkins, the registered owner at the time of trial, in the time since Cook had seen him driving it on a regular basis. Moreover, because the windows were down, anyone in the area could have "put that stuff in the car" before it was towed away. The circuit court rejected both arguments and denied both motions, explaining:

> The operative word here was that some of the stolen property was commingled [ ] with the identifying documents. I understand what you were saying was that [ ] maybe the documents . . . were there and all this got dumped on top; and he didn't see them in the vehicle. Maybe somebody else did it. [But] [w]e don't have that because . . . the officer said the items were mixed up together.

The circuit court found "the evidence sufficient despite the circumstantial nature." Based on that evidence, the court then found Moseley "guilty of each of the offenses beyond a reasonable doubt."

On July 17, 2014, Moseley moved to set aside the verdicts. During a hearing on that motion, the circuit court questioned defense counsel as to which inferences could be reasonably drawn from the evidence:

> THE COURT: Let me see if I can break this down. Do you concede it's a reasonable inference that, first, the person that stole the property in each case committed the burglary in each case?
>
> [Defense counsel]: Yes, sir.
>
> THE COURT: Do you think it's a reasonable inference that the same person committed both? Less strong but both?
>
> [Defense counsel]: It's certainly possible, Your Honor. I think it's a

conclusion that could be drawn. I don't think
it's the only conclusion to be drawn from the
evidence.

Nevertheless, Moseley maintained that the evidence
did not support an inference that he committed the
offenses because the Commonwealth failed "to establish
he was in possession of the vehicle or of the property
inside the vehicle." The circuit court took the motion
under advisement to further consider whether "there [was
a] reasonable hypothesis of somebody else's possession."
By order dated August 26, 2014, the circuit court
"conclude[d] that there [was] no sufficient basis for
vacating the judgments of conviction" and denied
Moseley's motion.

Moseley appealed his convictions to the Court of
Appeals, and a three judge panel reversed all four
convictions in an unpublished opinion. Moseley v.
Commonwealth, Record No. 0881-15-1, slip op. at 1, 2016
WL 3172701 (June 7, 2016). The Court of Appeals
initially ruled that the burglary and larceny inferences
were inapplicable because the evidence did "not prove
that [Moseley] had exclusive dominion and control over
the stolen property." Without the benefit of those
inferences, the Court of Appeals then held that the
evidence was insufficient because it "fail[ed] to link
[Moseley] to the offenses beyond a reasonable doubt."
The Commonwealth appealed to this Court, and we granted
its appeal on the following assignment of error:

The Court of Appeals erred in holding that the
evidence was insufficient to support Moseley's
burglary and grand larceny convictions because
the Court of Appeals improperly applied the
standard of review, considered each piece of
evidence in isolation, relied on unsupported
hypotheses of innocence reasonably rejected by
the trial court, and refused to consider
affirmative evidence of Moseley's guilt.

Moseley, 799 S.E.2d at 684-86 (alterations in original). Having

carefully surveyed the evidence, the Supreme Court of Virginia

held that "a rational factfinder could reasonably reject Moseley's

theories in his defense and find that the totality of the

suspicious circumstances proved beyond a reasonable doubt that

Moseley was the criminal agent in each of the offenses charged."
Id. at 687. Thereupon, the Supreme Court of Virginia reversed the
judgment of the Court of Appeals and reinstated Moseley's
convictions. Id.

## B. State Habeas Proceedings

On February 16, 2018, Moseley filed a petition for writ of
habeas corpus in the Supreme Court of Virginia. Petition for Writ
of Habeas Corpus 1, Moseley v. Clarke, No. 180230 (Va. Feb. 16,
2018). In that petition, Moseley argued that he was entitled to
relief on the following grounds:[2]

   (a)  The evidence was insufficient to find him guilty of
        burglary and grand larceny. Moseley Habeas 4, 9.

   (b)  The evidence was insufficient to find him guilty of
        burglary and grand larceny because it was merely
        circumstantial and there was no proof that he possessed
        the property. Moseley Habeas 5, 10-11.

   (c)  Appellate counsel was ineffective for failing to
        communicate with Moseley after his appointment and for
        failing to withdraw from representation when Moseley
        wanted to represent himself pro se in the Supreme Court
        of Virginia. Id. at 5, 12-14.

   (d)  Appellate counsel was ineffective for failing to consult
        with Moseley about his appeal in the Supreme Court of
        Virginia and failing to allow Moseley to review the
        Commonwealth's "opening brief." Id. at 5, 16. Moseley
        contends that if he had reviewed the brief he "could of
        combatted the statements like them using the word
        'vicinity.'" Id. at 16. Moseley also faults counsel

_____

[2] The Supreme Court of Virginia added pagination to the record
for Moseley's habeas proceedings. For ease of reference, the Court
employs that pagination assigned by the Supreme Court of Virginia
for citations to the record. The Court names citations to this
record as "Moseley Habeas."

8

for incorrectly paraphrasing from a case that establishes that the evidence must demonstrate that Moseley "had possession of the stolen goods," and that counsel should have challenged the Supreme Court of Virginia's reliance upon a "murder case . . . in a burglary case" was wrong because "there are two different standard[s]." Id. at 16-17.

(e) Appellate counsel was ineffective for failing to inform Moseley that his appeal in the Supreme Court of Virginia had been dismissed precluding Moseley from filing a timely petition for rehearing. Id. at 21.

On October 23, 2018, the Supreme Court of Virginia dismissed the petition. Moseley Habeas 711, 716. On January 3, 2019, Moseley filed his § 2254 Petition. (§ 2254 Pet. 15.)

## II. NO FEDERAL QUESTION

In Claim Four Moseley states the following:

Denial of Fourteenth Amendment (Protection and Equality). The Supreme Court defines two categor[ies] in which a state prisoner may gain habeas relief. One: The defendant must show that the state and Supreme Court arrived at two different conclusion or question of law (in the lower Court of Appeals and Supreme Court arrived at two different conclusion[s] using different laws in my case). Two: If the court uses a law that ha[s] different governing legal principles: A murder case was used in a larceny case where standards are different. In my case, it [was] about possession not probability.

(§ 2254 Pet. 10.) In this claim it appears that Moseley might be stating the standard for review under 28 U.S.C. § 2254(d). To the extent that Moseley is simply stating the standard of review here, he presents no justiciable claim for relief. To the extent that Moseley intends to argue that the Supreme Court of Virginia erred in reversing the Court of Appeals of Virginia on direct appeal,

9

Moseley has identified no federal constitutional violation, and instead challenges the Supreme Court of Virginia's determination of state law on direct appeal.[3] The Supreme Court of Virginia's alleged "error" on a point of state law provides no basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"); Slavek v. Hinkle, 359 F. Supp. 2d 473, 483-84 (E.D. Va. 2005) (explaining that a challenge to a sentence under Virginia's discretionary sentencing guidelines fails to implicate a federal right). For this reason alone, Claim Four will be dismissed.

To the extent that Moseley's claim could be seen to somehow implicate a federal right,[4] the claim is barred from review here for the reasons set out below.

---

[3] The Supreme Court of Virginia explained in conjunction with another claim, the "murder case," Commonwealth v. Hudson, 578 S.E. 781 (2003), that Moseley contends was improper to use in a burglary case, "appropriately set forth the standard for review in an appeal challenging the sufficiency of the evidence." Moseley Habeas 712, 714. Thus, Moseley's claim also clearly lacks merit.

[4] Moseley states that this claim alleges a "Denial of Fourteenth Amendment (Protection and equality)"; however, Moseley fails to explain, and the Court fails to discern, how this claim implicates the Fourteenth Amendment.

10

## III. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects.

First, a petitioner must use all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). On that point (use of all available state remedies), the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his [or her] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his [or her] federal habeas claim." Id. (citing Coleman v.

Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his [or her] claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

Moseley did not raise Claim Four in the Supreme Court of Virginia in his state habeas petition. If Moseley now attempted to present his claim to the Supreme Court of Virginia, that court would find it procedurally defaulted and time-barred pursuant to Section 8.01-654(A)(2) and 8.01-654(B)(2) of the Virginia Code. Both Virginia's statute of limitations for habeas actions and successive petition bars are adequate and independent procedural rules when so applied. See George v. Angelone, 100 F.3d 353, 363–

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

64 (4th Cir. 1996); Sparrow v. Dir. Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). Moseley fails to demonstrate any excuse for his default of Claim Four.[6] Accordingly, Claim Four is also defaulted and barred from review here.

## III. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C.

---

[6] Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013), fail to establish cause for the procedural default of these claims.

Although Moseley had no counsel at his "initial-review collateral proceeding," Martinez, 566 U.S. at 16, that fails to excuse his default, because Moseley complains of an error of the Supreme Court of Virginia. To the extent that Moseley faults appellate counsel for the default of his claim, the explicit language of Martinez applies to an inmate's default of a claim of ineffective assistance of trial counsel only. See Gaither v. Zook, No. 16CV64, 2017 WL 562419, at *4 (E.D. Va. Jan. 18, 2017) (citations omitted). Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim.

14

§ 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).

The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of

effective assistance of counsel be overcome.'" Id. (quoting Smith
v. Robbins, 528 U.S. 259, 288 (2000)).

Respondent agrees that Moseley raised Claims One through
Three of his § 2254 Petition in the Supreme Court of Virginia. As
discussed in detail below, the Court concludes that the Supreme
Court of Virginia's determination that Moseley's claims lack merit
is not unreasonable.

### A. Claim One and Three

In Claim One, Moseley argues that appellate counsel rendered
ineffective assistance when Moseley "reached out to him numerous
times and he didn't respond" and then refused "to remove himself
from [Moseley's] case" when Moseley wanted to proceed pro se and
instead, "chose to handle [Moseley's] entire case and oral argument
without [Moseley]." (§ 2254 Pet. 5.) Relatedly, in Claim Three,
Moseley contends that appellate "counsel was deficient . . .
because [he] was unaware of controlling law. He paraphrase[d] the
most important law in grand larceny cases [that] . . . [n]o matter
how much incriminating evidence you have you must show that the
accused had possession or knowledge of stolen goods, yet he simply
stated you must show possession[.] However, with the full quote,
[i]t prohibits the VA Supreme Court['s] use of a murder case where
standards are different [and] my lawyer was unaware of such." (Id.
at 8.) These claims were raised as Claims (C) and (D) in Moseley's
state habeas petition.

17

The Supreme Court of Virginia appropriately addressed these claims together. In explaining and rejecting Claims One and Three here, the Supreme Court of Virginia found:

In claim (C) and a portion of claim (D), petitioner contends he was denied the effective assistance of counsel when appellate counsel refused to correspond with petitioner and refused to withdraw as appellate counsel so that petitioner could represent himself in his appeal to this Court. Petitioner alleges that between February 13, 2017, and February 15, 2017, after petitioner complained to the Virginia State Bar that his attorney had failed to adequately communicate with him but before counsel received an extension of time from the Bar to respond to petitioner's complaint, petitioner wrote to counsel and asked him to withdraw from the case so that petitioner could represent himself. Petitioner contends counsel ignored this request and a subsequent request petitioner sent to the circuit court which was then transmitted by the court to counsel. Petitioner contends that, had counsel withdrawn from representation as petitioner requested, informed that the Commonwealth's petition for appeal had been granted, and sent him a copy of the Commonwealth's opening brief, petitioner could have "combated statements" such as the Commonwealth's use of word "vicinity." Petitioner contends the use of the word was improper because it is a "geographical" term that was not used in the trial court. Petitioner further contends counsel, in his brief filed in this Court after the Court granted the Commonwealth's petition for appeal, insufficiently quoted from Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981), which provides that the evidence must show "[petitioner] had possession of the stolen goods." In addition, petitioner contends counsel should have challenged this Court's reliance on a "murder case," Commonwealth v. Hudson, 265 Va. 505, 578 S.E.2d 781 (2003), in setting forth the standard of review in its opinion when the standard in a burglary case was different, and he contends counsel should have challenged the Commonwealth's assertion that the totality of the circumstantial evidence was sufficient by arguing the chain of circumstantial evidence linking him to the stolen items found in the car he drove was broken after the car was towed away and impounded.

Petitioner alleges counsel's behavior violated unspecified "ethics rule[s] and procedure." Finally, petitioner contends that, in his response to the Bar regarding petitioner's complaint that counsel had failed to communicate with petitioner, counsel falsely stated that he had been in contact with petitioner.

The court holds claim (C) and this portion of claim (D) fail to satisfy the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the transcripts of the trial, motion to set aside the verdict, and sentencing, and the record of the proceedings in the trial court, the Court of Appeals, and this Court, demonstrates that, at the time petitioner allegedly requested counsel withdraw from his appeal so that petitioner could represent himself, the Court had already granted the Commonwealth's petition for appeal and the brief for petitioner, as appellee, was due to be filed in less than a week. Further, according to petitioner, he was incarcerated throughout the pendency of his appeal in this Court. The Sixth Amendment does not apply to appellate proceedings, thus there is no constitutional right to self-representation on appeal. Martinez v. Court of Appeal, 528 U.S. 152, 161 (2000). Under the circumstances, petitioner cannot show that, had counsel sought to withdraw so that petitioner could represent himself in this Court, the Court would have granted the motion, especially given the lateness of petitioner's request and the impending deadline.

Moreover, petitioner fails to demonstrate that, had the Court allowed counsel to withdraw and petitioner to proceed pro se on his appeal, the result of the proceeding would have been different. Petitioner cites Williams v. Commonwealth, 289 Va. 326, 333-34, 771 S.E.2d 675, 679 (2015) in support of his argument that had he received a copy of the Commonwealth's brief he "could have combated statements like them using the word vicinity" because that word was not used at trial and an appellate court may not rely on a geographical fact that was not used at trial. Williams holds, "the arguments of the parties and the statements of the trial court must demonstrate clearly that the trial court has taken judicial notice of the fact before a party may rely upon such notice on appeal." Id. Thus, Williams does not stand for the proposition argued by petitioner. Moreover, petitioner fails to state where in the

19

Commonwealth's brief the word "vicinity" was improperly used. The record, including the Commonwealth's brief filed in the direct appeal in this Court, demonstrates all references made to "vicinity" refer to Captain Susan Canny's testimony at trial that she saw petitioner in a car "against 5 Wilderness Road," the address of the victim of the first burglary on June 3, 2013. The record, including the transcript of the hearing on the motion to set aside the verdict, demonstrates the trial court first used the word "vicinity" when it stated that a witness, Captain Canny, testified she saw petitioner in a car "in the vicinity" of the first home that was burglarized on the day and during the time of the burglary. Thus, the Commonwealth's use of the word "vicinity" is simply an accurate recitation of the facts.

Petitioner also contends appellate counsel failed to quote "the whole phrase" from Best v. Commonwealth, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981), which petitioner contends "states no matter how much evidence the Commonwealth has marshalled they must show I had possession of the stolen goods" and that, had petitioner represented himself, he would not have made that mistake. The record, including petitioner's brief filed in this Court in the direct appeal, demonstrates counsel cited Best for the proposition that "for the larceny inference to arise, the Commonwealth must establish that the accused was in exclusive possession of property recently stolen." Counsel further argued and cited Best for the propositions that the Commonwealth had to show "the accused was exercising dominion and control over the stolen property," and that the inference of larceny "does not arise when the evidence merely reveals that the stolen property was found in a place to which several people, including the accused, had access." Petitioner does not identify what further quotations from Best should have been used, nor has he explained how quoting more extensively from Best would have resulted in a different outcome on appeal.

Similarly, petitioner cannot show how an attack on this Court's citation to Hudson, presumably in a petition for rehearing, might have altered the outcome of his appeal. The record, including this Court's opinion in Mosely, demonstrates Hudson appropriately set forth the standard for review in an appeal challenging the sufficiency of the evidence.

Petitioner contends he would have more effectively challenged the Commonwealth's assertion that the totality of the circumstantial evidence was sufficient and argued the chain of circumstantial evidence linking him to the stolen items found in a car he had been seen driving was broken after the car was towed away and impounded. The record, including petitioner's brief filed in this Court on direct appeal, demonstrates counsel did make this argument, although he did not use petitioner's precise phrasing. Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (D), petitioner contends he was denied the effective assistance of counsel when appellate counsel failed to inform petitioner that this Court had granted the Commonwealth an appeal, failed to obtain petitioner's consent before filing an "opening brief," failed to send petitioner a copy of the Commonwealth's brief, and failed to inform petitioner of the date set for oral argument.

The Court holds this portion of claim (D) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. As explained above, petitioner has failed to identify any issue or argument counsel neglected to raise on appeal that might have changed the outcome. Further, petitioner has not otherwise proffered how improved communication with counsel would have alerted counsel to any issue or argument that might have impacted the outcome [of] this Court's reversal of the Court of Appeals' decision. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Moseley Habeas 712-15 (last alteration added).) Moseley fails to

direct the Court to any law or evidence that demonstrates that the

Supreme Court of Virginia's conclusion is incorrect, much less

unreasonable. Little discussion is required here in light of the

Supreme Court of Virginia's thorough dispensation of Moseley's

claims that are mostly steeped in interpretation of Virginia law.

See 28 U.S.C. § 2254(d)(1)-(2); Richardson v. Branker, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . , a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."); cf. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

At the base of Moseley's claims is his apparent belief that he is more knowledgeable about the law than his appellate attorney. However, Moseley fails to demonstrate, and the Court fails to discern, how Moseley was prejudiced by his inability to represent himself pro se on appeal or by counsel's alleged oversight in failing to permit Moseley to review and provide input on appeal strategy. As the Supreme Court of Virginia aptly explained, Moseley has not demonstrated that the arguments that counsel omitted would have altered the Supreme Court of Virginia's determination on direct appeal that the Court of Appeals of Virginia erred in overturning his conviction. Nor has Moseley shown that, had he been allowed to represent himself on appeal, the result of the proceeding would have been different. Additionally, Moseley fails to demonstrate that the arguments counsel made on appeal were erroneous, incomplete, or that "the ignored issues [were] clearly stronger than those presented."

Bell, 236 F.3d at 164 (citation omitted).[7] Because Moseley fails to demonstrate any prejudice, Claims One and Three will be dismissed.

**B. Claim Two**

In Claim Two, Moseley contends that appellate counsel rendered ineffective assistance because he failed to notify Moseley that the Supreme Court of Virginia had issued its opinion causing Moseley to miss the deadline for filing a petition for rehearing on the basis that the Supreme Court of Virginia "used a murder case in a grand larceny case where totality standards are different." (§ 2254 Pet. 7.) This claim was raised as Claim (E) in Moseley's state habeas petition.

In explaining and rejecting this claim, the Supreme Court of Virginia found:

> In a portion of claim (E), petitioner contends he was denied the effective assistance of counsel when appellate counsel failed to timely inform him of this Court's June 8, 2017 opinion reversing the decision of the Court of Appeals of Virginia.
> The Court holds that claim (E) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate how counsel's alleged failure to inform him of the opinion of the full Court reversing the Court of Appeals' decision to reverse his conviction negatively affected the outcome of the proceedings. Thus, petitioner has failed to demonstrate there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

---

[7] Rather, the claims Moseley believes counsel omitted appear to be entirely meritless.

> In another portion of claim (E), petitioner contends he was denied the effective assistance of counsel when appellate counsel failed to petition this Court for rehearing without consulting petitioner.
> The Court holds this portion of claim (E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate any grounds upon which counsel could reasonably have argued rehearing was warranted after the case was heard and decided by the full Court. Thus, petitioner has failed to demonstrate that counsel's performance was deficient of that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Moseley Habeas 715-16.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Inexplicably, Moseley continues to believe that it was some grave error for the Supreme Court of Virginia to cite to a murder case for the standard of review for the sufficiency of the evidence in a burglary case. Counsel cannot be faulted for perceiving that a petition for rehearing would be futile, especially if based on the claim Moseley intended to raise. Moseley also fails to demonstrate that, had counsel advised him of the Supreme Court of Virginia's decision in time for him to file a petition for a rehearing, any petition for rehearing raising this claim would have been successful. Moseley fails to identify any error in the Supreme Court of Virginia's decision. Because Moseley fails to demonstrate any deficiency of counsel or resulting prejudice, Claim Two will be dismissed.

24

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 8) will be granted. Moseley's § 2254 Petition will be denied and his claims dismissed. A certificate of appealabilty will be denied.

The Clerk is directed to send a copy of Memorandum Opinion to Moseley and counsel of record.

It is so ordered.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 5, 2019